LUCE & Co., S. EN C., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

No. 594.—*Resuelto:* Julio 24, 1925.   (La resolución del tribunal·en la pág. 952, *post.*)

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

Luce & Co. Sociedad en Comandita, solicitó de esta corte que admitiéramos una apelación y expidiéramos una citación de acuerdo con la ley.   La pretendida apelación es contra una resolución de esta corte de febrero 20, 1925 (33 D.P.R.) por la que confirmamos la calificación del Registrador de Guayama de fecha abril 17, 1924.   La facultad de esta corte para revisar la decisión del registrador es la conferida por la ley de marzo 1º de 1902, (Comp. sec. 2184).   De acuerdo con la sección primera de esa ley, cuando el registrador deniegue una inscripción expondrá los motivos legales de su negativa.   La sección 2 prescribe lo siguiente:

"Si éste, dentro del segundo día no recogiere el documento, el registrador lo enviará por el correo más próximo al Tribunal Supremo, quien dentro de diez días decidirá si aprueba o revoca la negativa del registrador, y al día siguiente se lo devolverá por correo al registrador para que cumpla la resolución dictada acompañado de una copia de dicha resolución.

"Durante esos dos días el registrador, el interesado o su abogado, harán por escrito al tribunal las alegaciones pertinentes a su derecho."

Al ser presentada esta petición de apelación la corte señaló un día para oir a la apelante y al registrador. Este último presentó un memorándum por escrito. La apelante archivó también un memorándum por escrito y compareció por medio de abogado. El registrador sostuvo que la resolución de esta corte no era apelable de acuerdo con las secciones 126 y 246 del Código Judicial toda vez que no había ninguna sentencia final o decreto dentro de las prescripciones de dichas secciones. Creo que el registrador ha penetrado en la verdadera razón que existe para denegar este recurso al decir que estos procedimientos se siguieron por virtud de leyes especiales autorizadas por un estatuto particular y que no tienen un carácter judicial. El registrador hace cita también de la obra de Corpus Juris al efecto de que ha sido sostenido frecuentemente en términos expresos o en efecto que una sentencia, orden o decreto no es final o apelable a no ser que resuelva los méritos de la controversia o los derechos de las partes sin dejar nada para una futura determinación. El artículo 66 de la Ley Hipotecaria y el 78 de su reglamento prescriben que ni la decisión del registrador ni una apelación contra la misma puede afectar a los derechos de personas a tener sus documentos debidamente admitidos en el registro por virtud de la presentación de sus cuestiones ante una corte. Los artículos 67 y 101 de la ley y los 111, 112, 115 y 116 del Reglamento sostienen la misma conclusión. Aunque el registrador ha expresado tal vez la verdadera razón por la cual debe ser negada esta apelación, sin embargo me propongo considerar la cuestión desde un punto de vista algo diferente:

Las secciones 1 y 2 del artículo 3 de la Constitución de los Estados Unidos prescriben lo siguiente:

"Sección 1.—Se deposita el poder judicial de los Estados Unidos en una Suprema Corte, y en los tribunales inferiores que en lo sucesivo creare y estableciere el Congreso.

"Sección 2.—El poder judicial conocerá de todos los casos en Derecho y Equidad que dimanen de la Constitución y leyes de la

federación, así como de los tratados ya celebrados o que puedan celebrarse en lo sucesivo bajo su autoridad en todos los casos que afecten a los Embajadores, demás Ministros públicos, y a los Cónsules: de todos los casos de la jurisdicción de almirantazgo y marina; de las controversias en que la Federación fuere parte; de las que se siguieren entre dos o más Estados; entre un Estado y los ciudadanos del mismo Estado que reclamen terrenos bajo concesiones hechas por diversos Estados y entre un Estado o sus ciudadanos, y Estados, ciudadanos, o súbditos extranjeros.''

Actuando de acuerdo con la facultad conferídale, el Congreso ha definido y clasificado la jurisdicción de las varias cortes de los Estados Unidos y de acuerdo con ella, ha dado jurisdicción a dichas cortes sobre ciertos casos. Los estatutos que definen la jurisdicción de las diferentes cortes hablan casi invariablemente de ''casos'', lo cual es una consecuencia natural de las limitaciones impuestas al poder judicial por la Constitución de los Estados Unidos.

Cita la apelante el artículo 43 de la Ley Orgánica, a saber:

''Artículo 43.—Los recursos por causa de error y las apelaciones contra las sentencias y decretos definitivos del Tribunal Supremo de Puerto Rico, podrán ser interpuestos y seguidos ante la Corte de Circuito de Apelación para el primer circuito y ante la Corte Suprema de los Estados Unidos, de la manera como ahora está dispuesto por ley.''

En vista de la Constitución de los Estados Unidos y de la jurisprudencia que luego consideraré no tengo duda alguna de que las sentencias y decretos a los cuales se refiere el Congreso en el artículo 43, *supra,* eran en ''casos''. El referido artículo hace referencia a la ley existente, o sea la sección 246 del Código Judicial, la cual prescribe lo siguiente:

''Los recursos por causa de error y las apelaciones contra las sentencias y decretos definitivos de la Corte Suprema del Territorio de Hawaii y de la Corte Suprema de Puerto Rico podrán ser interpuestos y llevados ante la Corte Suprema de los Estados Unidos dentro del mismo término, en la misma forma, bajo las mismas reglas,

y en los mismos casos en que los recursos por causa de error y apelaciones contra las sentencias y decretos finales de la más alta Corte de un Estado en que una sentencia en el pleito pueda ser obtenida, pueden ser interpuestos y llevados ante la Corte Suprema de los Estados Unidos de acuerdo con las disposiciones de la Sección doscientos treintisiete; y en todos los demás casos civiles o criminales de la Corte Suprema del Territorio de Hawaii y de la Corte Suprema de Puerto Rico, tendrá competencia la Corte Suprema de los Estados Unidos para requerir por *certiorari,* a petición de cualquiera de las partes en los mismos, que el caso le sea certificado, después de haberse dictado una sentencia o decreto definitivo, con el objeto de ser revisado y resuelto, bajo el mismo poder y autoridad como si hubiese sido llevado a la Corte por medio de apelación o recurso por causa de error; pero no será concedido el *certiorari* en tal caso, a menos que se presente la petición con tal objeto a la Corte Suprema de los Estados Unidos dentro de los seis meses a partir de la fecha de dicha sentencia o decreto. Los recursos por causa de error y las apelaciones contra las sentencias y decretos finales de la Corte Suprema del Territorio de Hawaii y de la de Puerto Rico, en los cuales la suma en controversia, con exclusión de costas, cuyo importe habrá de determinarse por medio del juramento de cualquiera de las partes o de otros testigos competentes, exceda de cinco mil dólares, podrán ser interpuestos y llevados ante las Cortes de Circuito de apelación.''

Aunque en el último párrafo no se hace mención de ''casos'', el resto de la sección demuestra que el Congreso estaba considerando únicamente ''casos''. Si bien la apelante, si tenía un derecho de apelación, no sería afectada por la ley del Congreso de febrero 13 de 1925, sin embargo esa ley, en tanto hace referencia a la cuestión que consideramos, restablece meramente la naturaleza de la jurisdicción que el Congreso estaba confiriendo y que se limita a ''casos.''

El artículo 128 (*a*) dice que las Cortes de Circuito de Apelaciones tendrán jurisdicción de apelación para revisar por medio de apelación o recurso por causa de error, las decisiones finales,—primero, en las cortes de distrito en todos los casos excepto en que las apelaciones o recursos por causa de error pueden ser interpuestos directamente a la

Corte Suprema según se dispone en la sección 238; segundo, en las cortes de distrito de los Estados Unidos para Hawaii y Puerto Rico en todos los casos; tercero, . . . . Cuarto, en las Cortes Supremas del Territorio de Hawaii y de Puerto Rico en todos los casos civiles (*sic*), civiles o criminales, en que esté envuelta la interpretación o aplicación de la Constitución o la validez de un Tratado de los Estados Unidos hecho bajo su autoridad; en todos los demás casos civiles en que la suma en controversia con exclusión de intereses y costas exceda de $5,000 y en todos los procedimientos de *habeas corpus*. El Congreso, pues, hizo evidente que la jurisprudencia de las cortes federales está limitada en apelación a "casos", como necesariamente debe ser bajo la Constitución de los Estados Unidos.

Paso, pues, a examinar si existe algún "caso" ante la corte en el sentido constitucional o estatutorio. En el caso de *Cohens* v. *Virginia*, 6 Wheaton, 264, el Juez Presidente, Sr. Marshall, sostuvo, contestando al abogado, que si no podía traerse una cuestión ante una corte entonces no había ningún caso en ley o en equidad. El abogado había citado ejemplos para demostrar que no había ninguna jurisdicción cuando no existía ningún caso y el Juez Presidente convenía con él pero distinguiendo el caso ante su consideración.

En el de *Robertson* v. *Baldwin*, 161 U. S. 275, el Juez, Sr. Brown, revisó las decisiones y luego el artículo 3 de la Constitución, secciones 1 y 2. Entonces dijo que "la mejor opinión es que la segunda sección tuvo por objeto una definición constitucional del poder judicial (*Chisholm* v. *Georgia*, 2 Dall. 419, 475) que la Constitución tenía por objeto limitar a las cortes creadas por el Congreso; en otras palabras que tal facultad se extiende solamente al juicio y resolución de 'casos' en las cortes de registro." La corte pasó entonces a sostener que el Congreso podría conferir otras facultades a los funcionarios judiciales pero el poder resultante no era judicial y por consiguiente no fué un "caso."

En el de *Pacific Whaling Co.* v. *United States,* 187 U. S. 450, el peticionario solicitó una licencia protestando que no debía obligársele a sacarla. De acuerdo con la ley la licencia debía ser obtenida de la Corte de Distrito de Alaska para poder llevar a cabo ciertos negocios en ese territorio. Para poner a prueba la necesidad de la licencia el solicitante presentó una petición a la Corte de Distrito de Alaska y la notificó al fiscal de distrito. El Juez, Sr. Brewer, dijo lo siguiente:

"El procedimiento en este caso es uno nuevo y la primera cuestión es si había algún caso o pleito—algún caso dentro del precepto constitucional, artículo III, sección 2, que extiende el poder judicial de los Estados Unidos a todos los casos en derecho y equidad, que dimanan de la Constitución—en los cuales se dictaba sentencia final o decreto que daba derecho al peticionario a interponer una apelación. 'Un caso es un pleito en ley o equidad establecido de acuerdo con el curso regular de los procedimientos judiciales; y cuando envuelve cualquier cuestión que surge por virtud de la Constitución, leyes o tratados de los Estados Unidos, está dentro del poder judicial confiado a la Unión.' 2 Story Sobre la Constitución, sección 1646; Osborn v. United States Bank, 9 Wheat. 738, 819. Aquí se presentó una solicitud que en forma era una petición para una licencia con la protesta de que el peticionario no debía ser compelido a sacarla. La solicitud fué concedida y el peticionario ciertamente que no podía apelar contra una orden que le concedía lo que pedía. La petición, es verdad, estaba acompañada de una protesta, pero ¿quién ha oído jamás que se haya admitido una apelación contra una protesta? No existía ningún pleito contra el secretario para impedirle recibir el dinero de la licencia. A él no se le hizo parte y no registró ninguna comparecencia, ni se dictó ningún decreto ni sentencia contra él."

El caso de *Douglas* v. *Hutchison,* 53 N. E. 628, resuelve que las impugnaciones de una elección pueden ser fijadas en diferentes sitios; que la legislatura puede prescribir sobre una decisión final aliunde; Illinois prescribía una decisión y, según parece, una apelación a cierto tribunal especial. El apelante sostuvo que tenía derecho a recurrir a la Corte de Circuito por virtud del precepto de la ley que le confería

jurisdicción de todos los casos en ley y en equidad. Se resolvió que una impugnación de una elección no era tal caso.

En el caso de *Barnett* v. *Pemiscot County Court,* 111 Mo. App. 693, la negativa de una licencia para una cantina de licores por una corte no era un ''caso''. Se resolvió que no procedía una apelación; que la apelación sólo se autorizaba en ''casos''. La corte dijo, ''Si el asunto no fuera judicial no cabe la apelación.'' Hubo definiciones de lo que es un ''caso'', citándose numerosas decisiones.

Varias decisiones también se examinan en el caso de *United States* v. *Dolla,* 177 Fed. 101, 21 Am. & Eng. Ann. Cases, 665, y las notas al último texto. Allí se resolvió que un procedimiento de naturalización no era un ''caso'', y por tanto la Corte de Circuito de Apelaciones carecía de jurisdicción en apelación. La nota expresa, resumiendo las decisiones:

''La palabra 'caso' generalmente se define en el sentido de que significa una cuestión ante una corte de justicia donde hay partes y materia objeto de la controversia entre ellas; un pleito o acción; una causa.''

El caso de *United States* v. *Dolla, supra,* no fué observado en la decisión de una corte de distrito sino únicamente por el buen fundamento de que una petición de naturalización requería el ejercicio de la facultad judicial y por tanto era un ''caso''. *United States* v. *Lenore,* 207 Fed. 865. Esta última decisión también establece de modo claro que cuando una corte ejercita su facultad judicial sólo puede surgir la apelación en la Corte de los Estados Unidos cuando la corte inferior está conociendo de un caso.

En la obra ''Words & Phrases Judicially Defined'', primera y segunda edición, hay también numerosas definiciones respecto a la palabra ''caso.''

La apelante Luce & Co. no discute formalmente que los procedimientos ante el registrador constituyen un ''caso''. La apelante sostiene, sin embargo, que la ley que nos con-

fiere el derecho de revisión de las decisiones del registrador convierte la resolución final de esta corte en una decisión apelable.

La contestación a esta alegación tal vez se anticipa por las anteriores consideraciones y decisiones de algunas de las opiniones que hemos citado. Probablemente la contestación más completa a esta contención puede encontrarse en el caso de *Muskrat* v. *United States,* 219 U. S. 346. El Congreso confirió o trató de dar a la Corte de Reclamaciones jurisdicción para resolver sobre la constitucionalidad de ciertos estatutos anteriores aprobados por el Congreso y que envuelven reclamaciones de indios y otras personas. La corte manifestó que el objeto y fin de la acción estaban enteramente comprendidos en la determinación de la validez constitucional de ciertas leyes del Congreso. La corte resolvió que esto era una tentativa a prescribir respecto a una determinación judicial y final en la Corte Suprema de la validez constitucional de una ley del Congreso. La corte preguntó si tal determinación estaba dentro de la facultad judicial conferida por la Constitución como había sido interpretada y definida en las autorizadas decisiones a las cuales se refería la corte, a saber: *Marbury* v. *Madison,* 1 Cranch, 137; *Osborn* v. *Bank of the United States,* 9 Wheat. 819; *Cohens* v. *Virginia,* 6 Wheat. 264, y otros. La corte creyó que no estaba y que la facultad judicial era el derecho de resolver verdaderas controversias que surgen entre litigantes adversos debidamente establecidas ante las cortes de jurisdicción competente; que la tentativa a obtener una declaración judicial sobre la validez de una ley del Congreso no se presentaba en un ''caso'' o controversia a la cual según la Constitución de los Estados Unidos sólo alcanza el poder judicial. La corte se expresó así: ''Es verdad que los Estados Unidos han sido hecho parte demandada en este caso pero no tienen ningún interés adverso a la reclamación. Su objeto no es establecer un derecho de propiedad en cuanto al gobierno o exigir una compensación por

alegados daños con motivo de la actuación por su parte."
Y además, "tal sentencia no será definitiva para las partes
cuando el litigio real trae ante la corte la cuestión de la
*constitucionalidad de dicha legislación."*

Lo mismo sucede con la cuestión ante nuestra considera-
ción. El registrador resolvió que Luce & Co. no tiene de-
recho a inscribir esta propiedad porque dicha sociedad no
la había adquirido legalmente, estando impedido un manda-
tario, por virtud del artículo 1362 del Código Civil de poder
adquirir la propiedad de su mandante, el derecho de Luce
& Co. a ser dueña o poseer esta propiedad en manera al-
guna está resuelto, ni tampoco la decisión del registrador y
su confirmación por este tribunal impiden a la apelante po-
der obtener una resolución en una corte competente que or-
dene a dicho registrador hacer tal inscripción. Por su-
puesto, después de citar a las partes necesarias y presentar
un caso.

Lo que la legislatura ha hecho es conferir a la Corte Su-
prema de Puerto Rico el derecho de ordenar que se ejecute
lo que el registrador rehusó hacer. No se determinan de-
rechos entre las partes excepto el derecho inmediato de la
inscripción.

En el tomo segundo de R.C.L., pág. 30, párrafo 7, se
dice lo siguiente:

"En un caso de tribunales estatutorios especiales, cuyos procedi-
mientos no son de acuerdo con la práctica de la ley común, no pro-
cederá ninguna apelación contra sus sentencias y órdenes a menos
que se confiera el derecho por el estatuto."

La idea principal en que ha de insistirse es que no pro-
cede ninguna apelación a la Corte de Circuito de Apelacio-
nes contra una decisión de esta corte en un recurso guber-
nativo, porque ni el registrador ni esta corte está proce-
diendo de acuerdo con el sistema de la ley común sino que
tanto la decisión del registrador como de este tribunal se
dictan por tribunales que proceden de acuerdo con la autori-
dad especial del estatuto.

Los casos que sostienen el anterior principio o que son más o menos aplicables a las consideraciones generales, *supra,* son los de *Renaud* v. *State Court of Mediation and Arbitration,* 124 Mich. 648, 83 N.W. 620, 51 L.R.A. 458; *New Orleans City & L.R. Co.* v. *State Board of Arbitration,* 47 La. 874; *Sullivan* v. *Haug,* 82 Mich. 548, 10 L.R.A. 265; *Mohave County* v. *Stephens,* 17 Ariz. 165, 149 Pac. 670; and *Campbell* v. *United States,* 224 U.S. 99.

Como ha llamado la atención la Corte Suprema de los Estados Unidos en varios de los anteriores casos, no existe ninguna parte adversa. El registrador necesariamente no tiene intereses adversos. Puede dudarse si podía en algún sentido ser considerado parte en un caso o controversia.

El recurso a esta corte siempre ha sido conocido como uno administrativo. Un derecho semejante existía en el tribunal más alto de la Isla antes de que esta corte fuera organizada. En tal fecha y en España tanto históricamente como lo muestra la Ley Hipotecaria, la revisión que tuvo lugar no se consideraba como un ejercicio del poder judicial.

La apelante cita el caso de *Bello et al.* v. *El Registrador de Arecibo,* 31 D.P.R. 118. Allí se hizo cierta reclamación adversa, según parece, en cuanto al propuesto recurrente, tal vez dando al asunto cierto aspecto de "caso". Sea esto como fuere, el Juez Asociado de turno, Sr. Hutchison, ordenó que se expidiera la citación. En la moción subsiguiente para que se dejara sin efecto la apelación, consideramos que habiendo sido expedida la citación la cortesía entre cortes exigía que la Corte de Circuito de Apelaciones resolviera la cuestión. Tuvimos también duda en cuanto a que si habiendo sido librada la citación la jurisdicción para desestimar la apelación no había pasado a la Corte de Circuito de Apelaciones. En el presente caso, después de haber examinado minuciosamente la cuestión en ambas apelaciones estoy convencido de que no procede la apelación.